**BLAHUT v. McCAHIL et al.**

**No. 1503.**

Court of Appeal of Louisiana. First Circuit.

Oct. 3, 1935.

Jos. M. Blache, Jr., of Hammond, for appellant.

S. S. Reid, of Amite, for appellee.

DORE, Judge.

This is a suit instituted by plaintiff for damages involving a collision at night between an automobile driven by defendant McCahil's minor son and a truck belonging to defendant Stafford, the said truck being left standing in the road without being guarded and without lights or signal whatsoever of its presence. There was judgment by default as against the truck owner, and, upon trial of the case as against defendant McCahil, judgment was rendered dismissing plaintiff's suit; plaintiff has appealed. Defendants have failed to answer the appeal, defendant McCahil being the only defendant making any appearance.

The accident happened on August 5, 1933, after the hour of 8 o'clock p. m. and well after dark on a gravel road leading from Springfield to Albany, in the parish of Livingston, and, at the situs of the accident, the highway is leveled, straight for quite a distance, and running north and south. McCahil was traveling north; Stafford's truck was facing north. Stafford's truck was loaded with pine piling logs of various lengths, ranging from 50 to 60 feet, and was left occupying the east half of the road. McCahil, defendant's minor son, was traveling at a rate of 40 to 45 miles per hour when he was hailed by plaintiff and others for a ride to Albany at about 2 miles from the situs of the accident. They, then, became guests of McCahil, the driver of the automobile, and expected McCahil to use such discretion in his driving as any prudent and careful driver should do.

The defendant has only interposed a defense to this cause to the effect that his son was not negligent, and that the sole and only proximate cause of the accident was the having of this unguarded and unlighted truck by defendant Stafford on the highway.

The question then is for us to determine as to whether or not defendant's minor son was negligent and that his negligence was the proximate cause of the accident.

Plaintiff testified that he and three companions were walking on the gravel road leading to Albany for the purpose of attending a dance at Albany, and that McCahil, defendant's minor son, picked them up; that he sat on the front seat, and his three companions sat on the rear seat; that the accident happened after about 2 miles thereafter, after the hour of 8 o'clock p. m., and that it was dark; that McCahil was traveling at about 45 miles per hour; that he perceived the truck in the road; that he was a distance of about 48 yards from the truck when he perceived the oncoming car; that the oncoming car passed the McCahil car some 25 to 30 yards beyond the truck; that McCahil did nothing to avert the accident; that he suffered a broken leg and broken ribs, and that he

suffered considerable pains, and that he attended Charity Hospital in New Orleans and was disabled for about a year.

Arpad Sznyr, one of the plaintiff's companions, testified to the same effect as to picking plaintiff and others by young McCahil and to the rate of speed; that the car was some fifteen yards from the truck when he observed the truck; that McCahil's car had passed the oncoming car some 20 yards from the truck; and that young McCahil did nothing to avert the accident.

Joe Sznyr's testimony is to the same effect, save and except that he warned young McCahil of the presence of the truck, to no avail.

Raymond Blahut's testimony is a corroboration of plaintiff's and the other two companions', except that the force of the blow forced the pilings through the cab of the truck and shoved the truck some 6 yards and to the right of the road.

Joe Juhasz, one of the plaintiff's witnesses, testified that he was on the highway, and that young McCahil passed him at about a speed of 40 to 45 miles per hour; that the southbound or oncoming car had passed the truck some 25 to 30 yards when it passed the McCahil car.

D. D. Sharp, plaintiff's witness, who identified himself as a traffic cop, testified that he visited the scene of the accident, and that the McCahil car had run into the rear of Stafford's truck, and that the truck had been moved forward a little bit; that the piling was between 40 and 50 feet long, and that there was sufficient room for cars to pass to the left of the truck; that the truck was well loaded; that it was the right side of McCahil's car which struck the Stafford truck.

John Farkas, plaintiff's witness, is merely to the effect that he inspected the Stafford truck after the accident, and that the truck was hit from the back, that the pilings were driven into the cab, and that the truck skid about 5 feet.

Iriom McCahil, defendant's minor son and driver of the automobile in this accident, testified that he left the home of his father after dark; that he met plaintiff and his three companions and picked them up; that at that time he had been traveling at about 40 miles per hour; that he was driving a 1928 Model Ford; that he was driving at about 40 miles per hour until he was blinded by the oncoming car, and he then reduced his speed to about 30

miles per hour; that the southbound or oncoming car passed him about 15 feet from the truck; that he perceived the truck as he was passing the other car at about 15 feet away, and he immediately cut his wheel to the left, his right front door striking the ends of the pilings; that he did not have the best of lights, but that they were "pretty good"; that the lights were medium, and the coming car had lights of the same type, enough however to blind him; that he had bad eyesight ever since he was six years old, and that he had had five other accidents prior to this one; that he had no time to apply his brakes; and that he had just time to somewhat swerve his car to the left.

Hollis McIntyre testified that he was traveling in a Model T Ford truck, and had passed this truck immediately prior to the accident; that the McCahil car passed him about 5 to 10 feet from the truck; that he immediately stopped his truck at the time of the collision, and that he was about 20 feet distant from the Stafford truck and automobile; that McCahil was traveling at about 30 miles per hour; that young McCahil swerved his car to the left in the attempt to miss the truck.

Jesse White testified that he was traveling south at or near the scene of the accident; that the McIntyre truck and the McCahil car passed each other about 20 feet from the Stafford truck; McCahil was traveling at about 30 miles per hour.

As can be seen, there is little contradiction in the testimony. It is certain that young McCahil was traveling at the rate of 40 miles per hour for a distance of 2 miles and before attempting to pass the oncoming car. The plaintiff states that he perceived the truck about 58 yards distant. Young McCahil contends that he did not perceive the truck prior to not more than 15 feet away. Plaintiff and his witnesses contend that the McCahil car passed the oncoming car about 25 yards from the truck; defendant and his witnesses contend that the two cars met about 15 to 20 yards away from the truck.

It is therefore certain that the southbound car had passed the truck at just a moment before the McCahil car struck it, but as to the speed of the McCahil car, it cannot be easily judged at night, because the opportunity to observe is so short that it may be likened to instantaneous; the slowing down in this case did not serve any purpose; it was the swerving of the

car which saved the life or lives of the occupants.

Young McCahil was grossly negligent in the operation of his automobile. He admits that his eyesight was bad, yet we find him traveling on a public highway, at night, at the rate of 40 miles per hour up to practically the moment of the accident; he only contends that at the moment of the collision he had reduced his speed to 30 miles per hour. Act No. 21 of 1932, title 2, § 3, rule 2, subd. (b) provides: "No person who is mentally or physically deficient to such an extent as to in any way interfere with or impair the ability to *properly, safely* and *efficiently* operate a vehicle shall be permitted to do so upon the public roads, highways or bridges of this State."

Yet, knowing his physical defects, he attempted to drive his car at such a speed. He admits that he had five other accidents, which goes to show his recklessness.

He states that he had good lights, and it must be presumed that he had such headlights as are prescribed in section 9, par. (g) (12), p. 192, of Act No. 21 of 1932, and which requires a driving light sufficient to render clearly discernible a person 200 feet ahead.

Plaintiff contends that he perceived this truck about 58 yards or 174 feet ahead, yet young McCahil states that he perceived the truck only 15 feet ahead. He is charged with having seen that which he should have seen.

Young McCahil does not inform us as to how far he was from the truck when he became blinded, but leaves us to infer that he was blinded at the time of passing the oncoming car, and which he states to be about 20 feet from the truck. There were no other objects between him and the truck. He should have seen this truck 200 feet away from him; and should have seen the oncoming car, and should have anticipated being blinded by it.

The road was level and straight, and the atmospheric condition of the night was normal. He then should have begun to slow down and take necessary precautions to protect himself and his guests.

The rule above quoted requires him to see a person 200 feet ahead, greater the reason he should have seen the truck in question; and it was his duty then to moderate his speed and to bring his car under such control that it could be stopped in a moment in case of emergency.

As stated in the case of Pepper v. Walsworth, 6 La. App. 610, at page 612: "The driver of an automobile has no right to assume that the road before him is open, and to proceed ahead without regard to the safety of those who may be therein. To proceed ahead when one is utterly blinded, as the driver of this car says he was, at a speed of twenty-five miles an hour, is the grossest kind of negligence." Citing with approval the case of Southall v. Smith, 151 La. 967, 92 So. 402, 27 A. L. R. 1194.

We concede that it has been frequently held that the character of the object which naturally affects visibility can make a material difference in cases of this kind. In the present case, the truck was loaded with long pine pilings, and there is no evidence herein to show wherein this fact affected visibility, and a load of such pilings on a truck is an object so large and conspicuous which should be seen under the illumination of headlights at least 200 feet distant, and a night driver should do whatever is necessary to be done in order to avoid striking it.

As stated by the Supreme Court in the case of Woodley & Collins v. Schusters' Wholesale Produce Co., Inc., 170 La. 527, 531, 128 So. 469, 470: "Whether it should be deemed negligence for the driver of an automobile to fail to slow down, in a case like this, depends so much upon the circumstances of the particular case that it is not easy nor safe to lay down a hard and fast rule on the subject. *As a general rule,* however, the driver of an automobile, going thirty miles an hour on a country road, at night, is guilty of negligence if he fails to slow down to a speed at which he can stop instantly when he becomes blinded by the headlights of an approaching automobile."

The exception to the above general rule has been recognized in the case above cited and in Jacobs v. Jacobs, 141 La. 272, 74 So. 992, L. R. A. 1917F, 253, and Penton v. Fisher (La. App.) 155 So. 35; but such is not the case here.

The defendant McCahil depends upon four cases of this court for affirmation of the judgment rendered by the lower court, and contends that these four cases have the effect of property rights which should not be disturbed, and we propose to discuss these cases in their order.

In the case of Futch v. Addison, 12 La. App. 535, 126 So. 590, the facts were that the truck, loaded with two logs, was left

standing 25 to 30 feet south of a bridge narrower than the highway; the approach to the bridge had been built up about 1½ to 2 feet on each side; there were two automobiles approaching plaintiff at the same time just as plaintiff reached this bridge. In other words, there were other obstructions preventing plaintiff from seeing the truck. This case is within the exception to the general rule, but such is not here.

In the case of Stafford v. Nelson Bros., 15 La. App. 51, 130 So. 234, this court based its decision on section 5 of Act No. 232 of 1926, p. 388, requiring automobiles left standing on the highway to have taillights or parking lights on the rear left fender. At that time Act No. 232 of 1926 was not the law, but Act No. 296 of 1928 was in effect and the governing law of the case, and section 50 of Act No. 296 of 1928 provided that automobiles should have headlights with power to illuminate the road for a distance of 200 feet ahead; and which act and its provisions were not called to our attention, and the case was wrongfully decided and is overruled.

In the case of Hyde v. Nelson Bros., 15 La. App. 90, 130 So. 237, a case arising out of the same accident as the above case, this decision is also erroneous and is overruled.

As to the case of Hanno v. Motor Freight Lines, 17 La. App. 62, at page 65, 134 So. 317, the rule as announced and quoted from Woodley & Collins v. Schusters' Wholesale Produce Co., Inc., 170 La. 527, 128 So. 469, is recognized as being the general rule involving such cases; we adhere to the fact this rule is not an inflexible rule, and that its application depends entirely on the facts and circumstances. In so far as this case may seem in conflict with the decision about to be rendered, it is overruled.

Our conclusion in this case harmonizes the jurisprudence of this state.

We are therefore convinced that young McCahil was grossly negligent and in fact driving recklessly, and that his negligence was a proximate cause of the accident.

We now pass to the quantum of damages to be allowed.

█ It is admitted that the plaintiff suffered a broken leg and broken ribs. The evidence is that he was confined in the Charity Hospital at New Orleans for a period of two months. We feel that a judgment of $500 will do substantial justice.

As to defendant Stafford, who did not appeal nor answer the appeal nor make any appearance in court, we cannot do otherwise but affirm the same, and the judgment will, in so far as he is concerned, be affirmed; and, in so far as to defendant William McCahil, it is annulled, avoided, and reversed, and judgment rendered accordingly.

It is ordered, adjudged, and decreed that the judgment herein appealed be affirmed in so far as to defendant Dewey W. Stafford, and that there be judgment herein in favor of Albert Blahut, plaintiff, and against defendant William McCahil, in the full sum of $500, with legal interest thereon at the rate of 5 per cent. per annum from judicial demand, until paid, with costs in both Courts.

Reversed and rendered.

LE BLANC, J., dissents.