At approximately 9:45 P.M., on Saturday, December 8, 1945, a 1936 Ford coach automobile owned and being driven by one Thomas Carter, and proceeding south on the Plank Road in the Parish of East Baton Rouge, collided in the rear of a 1938 Ford truck, being driven by one Isador Deamer, in the course and scope of his employment by the owner of the Ford truck, the defendant LeBlanc Lumber Company. At the time of the collision Thomas Carter was accompanied by a friend, Fate Crimp, and as a result of the collision the automobile of Thomas Carter was demolished and he and his guest sustained severe personal injuries. As a result Thomas Carter and Fate Crimp filed suits against the LeBlanc Lumber Company, a partnership, and J. Burton LeBlanc and Jesse LeBlanc, individually, as members of said partnership, and against the Standard Accident Insurance Company as the insurer of the LeBlanc Lumber Company, each asking for his respective damages resulting from the collision. The two cases were consolidated for trial.
The petitions of the respective plaintiffs are similar in that both allege that the collision was caused solely by the gross negligence of the defendant truck driver Isador Deamer in proceeding on the Plank Road in East Baton Rouge Parish, a heavily travelled paved highway, in a truck loaded with logs, not having any tail lights or flags or clearance lights of any kind. They allege that they were driving at a reasonable rate of speed, to-wit, at about 35 miles per hour, and that as they approached the Ford truck owned by the defendants herein from the rear, both Thomas Carter, the driver of the Ford coach, and his guest Fate Crimp, were blinded by the lights of automobiles proceeding north in the opposite traffic lane of the Plank Road, to the extent that it was impossible for either Carter or his guest, Crimp, to see any vehicles to their front, proceeding south on said Plank Road which had no tail or clearance lights.
Carter in his suit claims damages in his own behalf in the amount of $2,170.50, and for the use and benefit of his insurer in the sum of $250, representing his damaged automobile, less $50 deductible, and the plaintiff Crimp in his suit claims damages of $2,652.40, representing loss in wages of $64.80; medical expenses of $87.60, loss of three teeth, $500, disfigurement, $1,000, and pain and suffering, $1,000.
The original petitions were met by exceptions of vagueness, mainly to the effect that the exact time and place of the collision were not therein set forth. The exceptions of vagueness were met by amended petitions and thereafter an exception of no cause and no right of action was filed as to each petition based mainly on the proposition that the plaintiffs had not shown that they were free of negligence. This exception was overruled by the Court, and properly so, because it is fundamental that the plaintiff does not have to allege facts which negative negligence on their part, and their petitions positively set forth that the collision on which the suits are based was caused solely by the gross negligence of the defendant *Page 473 
and its truck driver operating in the course of his employment.
The defendants, after the exception was overruled, filed answer in each suit in which they denied the material allegations of the petitions and in which they allege that the proximate cause of the collision was the gross negligence of Carter, the driver, and of Crimp, his guest, in proceeding along this highly travelled highway at an unreasonable rate of speed and without keeping the car in which they were travelling under proper control and without keeping a proper lookout. In the alternative, the defendants plead that should any negligence be found on the part of Isador Deamer, the truck driver, then and in that event it should be found that the plaintiffs were guilty of negligence which contributed to the accident, barring their recovery.
After trial of the case, the trial judge rendered judgment in the Carter case rejecting his demand and dismissing his suit at his cost, and rendered judgment in the Crimp case in his favor in the sum of $1,500 for personal and permanent injuries, pain and suffering, and the sum of $57.50 for medical expenses, and for all costs of court, and assessed an expert fee in favor of Dr. Alvin Stander in the amount of $25 as part of the costs. In the Crimp case the defendants perfected a suspensive appeal, and in the Carter case, the plaintiff perfected a devolutive appeal. Before us, of course, the same facts are urged as before the lower court.
We do not have the benefit of written reasons for judgment by the trial judge, but it is apparent from his judgments that he found that the defendant truck driver was guilty of gross negligence and that the plaintiff Carter was guilty of contributory negligence, but that such contributory negligence could not be imputed to Crimp.
It is proven by the preponderance of the evidence that the defendants' truck was being driven along the highway without any tail lights or clearance lights whatsoever and was loaded with logs and had no flags or signals of any kind in the rear of the logs to give warning to oncoming traffic from the rear. It is clear that the truck driver was driving the truck with the knowledge and consent of the defendant partnership, LeBlanc Lumber Company, and the individual partners thereof and in the course and scope of his employment and that in view of the absence of rear flags, rear lamps and clearance lamps it was driving a truck in violation of the Highway Regulatory Act, Act No. 286 of 1938, and was acting in a grossly negligent manner.
The evidence is not clear as to the type of truck which was being driven nor as to how it was loaded with logs, but it is sufficient to show that Isador Deamer was guilty of gross negligence, while driving in the course and scope of his employment by the defendant partnership.
The only evidence we have as to why Carter failed to see the unlighted truck, outside of the fact that it was unlighted in the rear, is the testimony of Carter himself and his guest, who testified in the same manner; that is, that they were driving at a reasonable rate of speed, at about 45 miles per hour and that at a distance of about 50 feet prior to the collision they met an automotive vehicle coming from the opposite direction with its bright lights burning, and as a result they were both blinded and did not perceive the log truck of the defendant until within a short distance thereof, which they approximate at 10 feet, and that at that time Carter, the driver, cut off his gas and applied his brakes, but was unable to keep from colliding with the log truck; that as a result of the collision, the coupling pole of the truck struck through the right head light of the Carter automobile and ran through the car, demolishing the car and causing personal injuries to the occupants.
In so far as the plaintiff Crimp is concerned, it does not appear from the evidence that he ever had any cause or reason to exercise control of the operation of the Carter automobile. The doctrine that a guest not having charge of the operation of an auto is not required to keep a lookout for danger, but can rely upon the discharge of that duty by the driver who is responsible for its operation is well recognized *Page 474 
in this State. The guest, as we had occasion to say in other cases, cannot rely entirely or implicitly on the driver of the car, but is entitled to a reasonable extent, to place reliance on the care and proper management of the one operating the car. The guest cannot be placed on the same footing as the driver, in reference to the care, caution and vigilance which is required of the driver of a motor vehicle. The guest is not expected, as a general proposition, to have seen what the driver "should have seen".
In this case the plaintiff Crimp was a guest and his rights must be determined in that light. He had been travelling on the highway at about 45 miles an hour, a rate of speed not excessive, and neither he nor the driver, from the evidence, had indulged in alcoholic drinking of any kind and both were in proper condition for the purpose of travelling on the highway. He had no reason to complain about the way Carter was driving and no reason to anticipate that the driver of the oncoming car would fail to dim his lights and thereby cause him and Carter to become blinded, especially considering the fact that Carter dimmed his own lights. Whatever negligence that can possibly be charged to Carter could not conceivably be charged to Crimp, and in view of the fact that the gross negligence of the defendant is established and was a proximate cause of the collision, we can find no error in the judgment on the question of liability as to Crimp.
As to Crimp's quantum of damages, it is shown by the evidence that he was knocked unconscious in the accident and suffered much pain; that he had lacerations of the face, about the mouth primarily, and of the leg, in the region of the knee; that he lost three upper teeth and that his injuries kept him confined for approximately ten days; that thereafter he was able to work at his usual salary, but was forced to do light duty for some time thereafter and to continually keep a towel with him because of a discharge from his injured mouth. The award of $1,500 for pain and suffering and permanent injury appears to be reasonable. The other item awarded of $57.50 for medical expenses has been proved.
With reference to the case of Carter, we recognize the general rule which makes it the duty of a driver of an automobile to maintain a speed sufficiently slow and to have such control of his car that he can stop within the distance in which he can plainly see an obstruction or danger ahead, yet it has been well recognized that this rule has exceptions and modifications.
In the case of Woodley Collins v. Schusters' Wholesale Produce Co., Inc., 170 La. 527, 128 So. 469, in discussing whether or not the driver of an automobile should be deemed negligent for failing to slow down, the Supreme Court stated "that it depended on the circumstances of the particular case, and that it is not easy, nor safe, to lay down a hard and fast rule on the subject. The difficulty in laying down a hard and fast rule is that the act provides that the conditions and circumstances must be considered as well as the traffic, surface and width of the highway, and the location of the neighborhood. Such being the case, the particular facts of eachcase must be considered in arriving at a conclusion, and it would not be safe to lay down a hard and fast rule for that reason." Gaiennie v. Cooperative Produce Co., 196 La. 417,199 So. 377, 379(2, 3) (Italics ours.)
In determining whether an automobile driver should be held responsible for not seeing a truck with which he has a collision, the character, appearance and visibility of the truck must always be taken into consideration. In the cases at bar, although the evidence is not clear, the truck of the defendant was a log truck, heavily loaded with logs. This truck was an ordinary log truck consisting of a tractor and rear wheels attached by a coupling pole without any back, save that formed by the stack of logs; there was no area to reflect the lights of oncoming automobiles to its rear; its rear end generally stands about four feet from the ground. In this case Carter was travelling at a safe speed considering the prevailing weather condition and the highway, it being a paved highway with light traffic at that time, and the weather being clear. He could not *Page 475 
anticipate that a log truck would be travelling in his direction in violation of law, that is, without rear lights and flags and side clearance lights. According to his testimony, and we see no reason to question his veracity, he had dimmed his lights for the oncoming car, and the driver of the oncoming car failed to dim his lights. He was blinded only at the time he was about to pass the oncoming car. Upon being so blinded, he immediately released his accelerator and applied his brakes. He could not do any more before running into the rear of the log truck. It appears to us that Carter is corroborated by the testimony of Johnny Gross, one of the defendant's witnesses, who testified that as an oncoming car with "pretty bright" lights was passing the truck, he and the truck driver heard and felt a "bump" to the rear of the truck.
This case appears to us similar to the case of Rea v. Dow Motor Co., La. App., 36 So.2d 750. In that case the plaintiff had a rear end collision with an army truck and contended, among other things, that the cause of the collision was that the truck had no rear lights or reflectors or flares; that it was olive drab in color and difficult to see. In that case the Court sustained the plaintiff's position and excused him from the general rule that he should have had his car under control to the extent of perceiving the army truck within the range of his headlights and stopping, and avoiding the collision. In the Dow case the truck was parked, whereas in the case at bar the log truck was travelling, but in the case at bar, in addition to the difficulty of seeing the log truck, the driver was blinded immediately prior to the collision.
Under these circumstances we hold that the sole proximate cause of this accident was the gross negligence of the defendants in allowing this log truck to be driven on a main paved highway, at night, fully loaded with logs, and without rear lights or flags or clearance lights, and that this case comes within the exceptions of the general rule hereinabove mentioned.
As to Carter's quantum of damages, the evidence shows that his car was damaged in the estimated amount of $300, and that as a result his insurance company, under a $50 deductible policy, paid him the sum of $250, making a loss sustained by him of $50, and on the part of his insurer of $250. The defendant contends, and it is shown, that he received the sum of $65 for the salvage of his damaged automobile, but it is our view that this salvage was over and above the actual damage sustained by the plaintiff Carter, and represented his remaining interest in the case, we therefore find that in so far as the automobile is concerned, plaintiff suffered a loss of $50 and his insurer suffered a loss of $250. With reference to the other claims for damages of plaintiff Carter, the only evidence we have is his own testimony to the effect that as a result of the collision his glasses were broken and he received cuts on his face and on his right knee. The Court states that he received a cut on the right side of the eye about a quarter of an inch long and a cut approximately three quarters of an inch below the right eye, about one-half of an inch long. We have no testimony as to the cost of his glasses, nor any medical testimony as to the seriousness of the cuts received by him in the collision. His injuries do not appear to be substantial and we feel that he did suffer minor injuries and that an award of $100.00 would be ample therefor. Accordingly, the judgment of the lower Court should be reversed and judgment granted in the favor of plaintiff Carter in the sum of $150, and the sum of $250 for the use and benefit of General Insurance Company of America, with legal interest from judicial demand until paid, with costs.
A decree in each case will be granted in accordance with the reasons above set forth. *Page 476