ELLIS, Judge.
This is an appeal from a judgment of the district court sustaining an exception of no cause of action grounded upon the proposition that the plaintiff affirmatively alleged his own contributory negligence which constituted a bar to his recovery irrespective of the negligence of the defendant who left a parked unlighted truck in the highway. As stated by the district court, the gravamen of plaintiff’s petition is contained in Article 9 thereof which reads as follows:
“Petitioners further show that while the truck owned and operated 'by the said P. K. Spikes was sitting or parked in the right hand lane of traffic on said highway while headed in a northerly direction, or the east lane of traffic, under the circumstances above set forth, the automobile owned and operated by the said D. L. Watts, while traveling in a northerly direction at a speed of about 30 or 40 miles per hour in a careful and prudent manner and in the same lane of traffic in which the truck owned and operated by the said P. K. Spikes was parked, encountered another vehicle traveling in a southerly direction with bright headlights on at a point just past and south of the parked truck; that the headlights on said approaching vehicle were so bright that the said D. L. Watts was temporarily blinded and unable to see the unlighted parked truck ahead of him in the same lane of traffic and there were no flares or persons on said highway warning of the presence thereof; that immediately after the oncoming vehicle had passed the Watts automobile and the said D. L. Watts was able to see said truck owned by the said P. K. .Spikes ahead of him, he was so ‘dose to said track that he was unable to keep from striking same even though said D. L. Watts applied brakes and exerted every possible effort to do so; that *244 thé automobile driven by Watts struck the rear end of said truck causing extensive damage to the automobile of said D. L. Watts.”
The district court recognized the established jurisprudence of this state that one who drives a motor vehicle at night must do so ’ in such a manner as to be able to stop within the range of vision afforded by his headlights, and also recognized that there might be exceptional circumstances which will excuse a 'driver who fails to discover an obstruction or other, vehicle in, the road ahead of him and cited cases in support of each, but held as follows:
“By a mere reading of Article IX of plaintiff’s petition above quoted it is shown that the only exceptional circumstance that arose immediately prior to the collision was that the headlights on the car going south temporarily blinded the plaintiff. It is further shown, however, from the allegations of this Article of the petition that even though the plaintiff was traveling at a rate of speed of 30 or 35 miles per hour he did nothing at the time he was temporarily blinded to reduce his speed, for it was only immediately after he had passed the oncoming vehicle that temporarily blinded him that he applied the brakes and exerted every possible effort to prevent colliding with the stationary truck in the highway. Under the circumstances, I am of the opinion that the allegations of the petition affirmatively show that this plaintiff was guilty of contributory negligence which constitutes a bar to his recovery in this suit.”'
* * * * * *
“From my appreciation of the law, the mere fact that a motorist is temporarily blinded does not constitute such an exceptional circumstance which will exculpate him when he fails to discover some obstruction or some other vehicle on the road ahead of him. Consequently, since no exceptional circumstances are alleged in this petition, and the allegations affirmatively show that this plaintiff was guilty of contributory negligence, which was the proximate cause of this accident, same is a bar to his recovery, and accordingly the exception of no cause of action will be and the same is hereby sustained.”
The Supreme Court of Louisiana in the case of Dodge v. Bituminous Casualty Corporation, 214 La. 1031, 39 So.2d 720, 721, in which the facts are strikingly similar to those alleged in the present case, in dealing with an exception of no cause of action had the following to say:
“As a general rule, contributory negligence being a special defense cannot be pleaded on an exception of no cause of action since negligence is a question of fact which must be determined by a trial on the merits. There is, however; an exception to this general rule. For example, if the inference can be drawn from the facts alleged by the plaintiff showing him to have been guilty of contributory negligence, this negligence can be determined as a matter of law by the judge. McMahon, Exception of No Cause of Action in Louisiana, 9 T.L.R. 17, 22(1934). The first clear rule on this subject was formulated in Gibbs v. Illinois Central R. Co., 169 La. 450, 125 So. 445. In that case the court held that an exception of no cause of action based on plaintiff’s contributory negligence should not be maintained unless the facts alleged by the plaintiff show affirmatively that he was guilty of negligence and that such negligence was the proximate cause of the accident. This rule places the determination of each case on a trial on the merits rather than on paper pleadings. A decision on the exception of no cause of action is not a fair way to determine the rights of litigants, since the facts alleged in each case raise several problems materially affecting those rights which can best be solved by the hearing of evidence in the case.
“In West v. Ray, 210 La. 25, 26 So.2d 221, 224, the Court stated:
*245 “ ‘We conclude therefore that an affirmative defense, presentéd through exceptions or motions tried or triable only on the face of the petition, should not be sustained unless the allegations of the petition exclude every reasonable hypothesis other than the premise upon which the defense is based.’ ”
In the case of Carter v. Le Blanc Lumber Co., La.App., 37 So.2d 471, 472, which involved a collision between a log truck having no tail lights or flares or clearance lights of any kind being struck from the rear by an automobile, the driver of which was blinded by the lights of an oncoming automobile,. this Court in passing on an exception of no cause and no right of action based mainly on the proposition that the plaintiffs had not shown that they were free of negligence, stated:
“ * * * This exception was overruled by the Court, and properly so, because it is fundamental that the plaintiff does not have to allege facts which negative negligence on their part, and their petitions positively set forth that the collision on which the suits are based was caused solely by the gross negligence of the defendant and its truck driver operating in the course of his employment.” (Emphasis added.)
The Supreme Court in Gaiennie v. Cooperative Produce Co., 196 La. 417, 199 So. 377, 379, in discussing cases similar in fact to the one under consideration, stated:
“In the case of Woodley & Collins v. Schusters’ Wholesale Produce Co., Inc., 170 La. 527, 128 So. 469, in discussing whether or not the driver of an automobile should be deemed negligent for failing to slow down, we stated that it depended on the circumstances of the particular case, and that it is not easy, nor safe, to lay down a hard and fast rule on the subject. The difficulty in laying down a hard and fast rule is that the act provides that the conditions and circumstances must be considered as well as the traffic, surface and width of the highway, and the location of the neighborhood. Such being' the case, the particular' facts of each case must be considered in arriving at a conclusion, and it would not be safe to lay down a hard and fast rule for that reason.
“In the case of Louisiana Power & Light Co. v. Saia et al., La.App., 173 So. 537, the court stated in effect that a great many cases have held that the failure of the driver of a moving vehicle to observe an obstruction— usually in the form of a stationary vehicle — constituted such negligence as would prevent recovery, and cited many cases to that effect; but, the court aptly said in effect that this result had not been reached regardless of surrounding circumstances and facts. In fact, the courts have been careful to say in each case that no circumstances were involved that would justify the failure of the driver to see the object ahead. It would appear that this is a reasonable interpretation of the provision of Act No. 21 of 1932, aforementioned, because it specifically provides that the conditions and circumstances must be considered. While the general rule makes it the duty of the driver of an automobile to maintain a speed sufficiently slow and to have such control of his car that he can stop within the distance in which he can plainly see an obstruction or danger ahead, yet it has been well recognized that this rule has exceptions and modifications. Jacobs v. Jacobs, 141 La. 272, 74 So. 992, L.R.A.1917F, 253.
“In Kirk v. United Gas Public Service Co., 185 La. 580, 170 So. 1, this court stated that the general rule is not inflexible, and that its application depends on the facts and circumstances of each case. Many cases were cited therein where the rule was relaxed and the driver of the automobile exonerated from negligence.
“Many cases have held to the effect that ordinarily a motorist is negligent in not slowing down to a speed at which he can stop instantly when *246 blinded by headlights. However, a careful examination will reveal that the circumstances and facts of each case were taken into consideration in arriving at a conclusion. Also, it has been held in many cases that a motorist was guilty of negligence because he failed to see the obstruction or object in time to stop before colliding with it; but-, the facts and circumstances of each case have been considered in determining whether or not the motorist had sufficient reasons for not seeing the object or obstruction in time to stop.”
It was not necessary to plaintiff’s cause of action for him to allege that he reduced his speed at the time he was temporarily blinded, for the jurisprudence is to the effect that no hard and fast rule can be set but each case must rest on its own facts and circumstances, and in the present case plaintiff has alleged that he was driving at a speed of about 30 or 35 miles per hour on a highway which is a legal, prudent and careful rate of speed, and he cannot be required to negative his negligence. That is a matter for the defendant.
'It is apparent also, that the district court held that the mere fact that a motorist is temporarily blinded does not constitute an exceptional circumstance in any event or under any state of facts so as to relieve him of contributory negligence.
In Hanno v. Motor Freight Lines, 17 La.App. 62, 134 So. 317, 318 this Court in discussing an exception of no cause or right of action stated:
“He alleges that he was driving east on the Baton Rouge-Hammond highway on the night of September 10, 1929, and was about 200 yards east of the town of Holden in the parish of Livingston; that there was another automobile approaching him from the opposite direction, whose driver failed to dim his lights; that he pulled over to the right to give the on-coming car the proper amount of road for them to meet, and, in doing so, he ran into this parked truck of the defendant which had no signal or warning whatsoever of its presence on the road.
“The defendant filed an exception of no right or cause of action, based, as we understand it, on the failure of the plaintiff to have alleged that he was blinded by the glare of the headlights of the approaching car. Counsel for defendant argues that, if the on-coming car did not have blinding headlights, it was not necessary for the driver to dim them, and if, on the other hand, the allegation made is meant to convey the idea that the headlights were blinding, then it was the duty of plaintiff, under the law, to have his car under such control as to bring it to a complete stop within the distance his headlights illuminated the road in front of him.
“We are of the opinion that the question raised under the exception is properly a matter of defense, and, as the petition shows a cause of action, the ruling of the lower court on the exception was correct.”
On the merits this Court, speaking through Judge, now Justice, Le Blanc, stated:
“The negligence of defendant having been shown, it remains now for us to decide whether there was any contributory negligence on the part of plaintiff which would bar his recovery.
“Counsel for defendant relies principally on that rule which he takes from certain cases, a good many of them being from other states, to the effect that it is the duty of the driver of an automobile at night to keep his car under such control so that, in case he meets another car and is blinded by its lights, he can bring his car to a complete stop within the distance on the road illuminated by his own lights. We find that to be a correct statement of what the rule is in the cases cited, but we are of the opinion that its application depends entirely on the facts and circumstances arising in each case. In the latest case referred to by counsel, *247 Woodley & Collins v. Schusters’ Wholesale Produce Co., Inc., 170 La. 527, 128 So. 469, 470, the Supreme Court of this state holds that it is not an inflexible rule. We quote the following : Whether it should be deemed negligence for the driver of an automobile to fail to slow down, in a case like this, depends so much upon the circumstances of the particular case that it is not easy nor safe to lay down a hard and fast rule on the subj ect.’
“It is rather difficult to say, we believe, at what precise moment the driver of an automobile becomes blinded by the glaring lights of an approaching car. Some people with good eyesight are never confused, and others less fortunate' seldom or never drive at night because of their nervousness and anxiety in this respect. The plaintiff in this case says that the other car was on him before he knew that its lights were extremely bright. Up to this time, he seemed to have apprehended no trouble or difficulty in meeting it. He was not going more than 35 miles an hour, on a straight, level road 27 feet wide. His lights were in good working order, and he says he was looking ahead. Whilst a reasonable precaution might prompt a driver to travel slower at night than during the daytime, the law makes no difference as regards the regulation of speed. The only extra requirement of the law is that a person driving an automobile after dark must have his car equipped with front lights of some standard projection. That requirement is meant-to insure, as far as possible, safe driving under the ordinary, normal conditions brought about by reason of darkness. ■It is not shown here that the plaintiff’s car was not so equipped. There is nothing then to indicate any negligence on his part, unless it be his alleged failure to have brought his car to an instant stop when he became confused and blinded by the glaring headlights of the on-coming car.
“It was at the moment immediately after the car had passed him, he says, that he found himself confronted with this situation of danger produced by the presence of this unguarded truck on the road. It was too late then to stop before running into it, and too late also to attempt to pass around it. Under the circumstances, was he negligent?
“We are of the opinion that a person who is blinded by the lights of a car coming from an opposite direction is called on to exercise great caution and have his car under such control as to safely meet any ordinary emergency which may present itself on the road, because of the darkness, but we are not prepared to hold that he is expected to be able to stop his car, almost on the spur of the moment, when, as in this case, he finds himself confronted suddenly with a situation of extreme peril on the highway such as had been created by this defendant. The situation of emergency was not an ordinary one, as persons are not permitted to leave unguarded, and without lights, trucks or vehicles parked on the public highway after dark. There is another rule of law, equally as well recognized as the one contended for by counsel for defendant in this case, to the effect that the driver of an automobile, confronted with imminent danger to his life or bodily harm, will not be held liable for the results of a collision, even though he did not exercise the best judgment, considering the situation in which he had been placed by the inexcusable negligence of the defendant. This last rule was applied in Stafford v. Nelson Bros., 15 La.App. 51, 130 So. 234, a case where the facts were very much similar to those presented here.”
Thus, we see in the Hanno case that the allegations were similar but not as specific as those in the present case, and the court held that the question raised under the exception was a matter of defense.
In the present case, as to whether it was necessary for the plaintiff to slow down or attempt to bring his car to an immediate stop at the time he was temporarily blinded is a matter of defense. On the merits in *248 the Hanno case this Court, under the particular facts and circumstances shown on the trial of the case, held that the glaring or blinding headlights did constitute in effect an exceptional circumstance.
Waters v. Meriwether Transfer Co., 18 La.App. 18, 137 So. 578, 581, was a case in which the driver of an automobile was temporarily and suddenly blinded by rear or oncoming bright lights and who was faced with a sudden emergency, that is, a parked truck on. the highway without lights or other warning signals and it was shown that there was no time between the first appearance of the bright lights and the happening of the accident to observe the necessary rules of caution with reference to stopping and pulling to one side. In that case the Second Circuit Court of Appeal held that the driver of the automobile could not be charged with negligence for not stopping and, on the question of contributory negligence, the Court stated:
“We come now to the question of the alleged negligence of Clarence Edwards, the owner and driver of the Cadillac automobile. The courts almost uniformly hold the driver of an automobile negligent when he collides with any kind of vehicle parked on the right side of a road at night, whether the parked vehicle was properly lighted or not. There are some exceptions to the rule, and plaintiff contends that there were circumstances connected with this collision which exculpate Edwards from the charge of negligence in the accident. Defendant’s loaded truck and trailer were parked on the right or west side of the highway not a great distance south of a crossroad that intersects the highway, and about the same distance from the crest of a hill between it and the town of El Dorado. Clarence Edwards, the owner and driver of the Cadillac automobile, slowed down, sounded his horn, and proceeded with care and caution as he approached and crossed the said intersecting road. As he was crossing this road, another car with headlights burning, approached from the right or west and turned into the highway toward El Dorado. This threw this other car immediately behind the Cadillac, and the headlights from that car immediately cast a reflection in the windshield, as. well as the rear view mirror, of the Cadillac car. Simultaneously with this instant, another car came over the crest of the hill toward the Cadillac. Just when the lights of the car from the rear and the one coming toward him. attracted his attention at the same time,. Edwards was close to, and suddenly became aware of the presence of, the parked truck and trailer. The driver of the car that was meeting the Cadillac was of the opinion that Edwards was traveling at an excessive rate of speed, but the courts have uniformly held that it is impossible to judge the speed of an on-coming car with any degree of accuracy at night. Clai'ence-Edwards and Mildred Studerick, the two surviving occupants, deny that the Cadillac was being driven at a reckless rate of speed. Edwards very properly approached the crossroad with care and caution, and devoted his attention to the automobile that was approaching the intersection at the same time, and which immediately followed behind him in the highway, going toward El Dor-ado. As the lights from the rear automobile cast their reflection on his windshield and rear view mirror at the same time as those from the on-coming car from the crest of the hill, he was prevented from seeing the parked truck and trailer in time to stop before reaching it. A sudden emergency was thus created, and he acted with the best judgment possible. Ordinarily, it is always held that a driver of an automobile must see every parked car or object on the right side of the road at night in time to. stop his car before colliding with it, nor is he excused because of on-coming bright lights. If bright lights blind him, he must pull to. the right and slow down or stop until the confusion is over. But if the sudden appearance of bright lights prevents him from seeing the parked vehicle and creates an emergency, he is *249 not guilty of negligence, and is excusable, if he meets this emergency with the best possible judgment. In all the cases in which it is held that the driver of an automobile cannot be excused because of being blinded by approaching bright lights, the evidence shows that the driver of the automobile sees the bright lights for a considerable distance in front of him, and proceeds in spite of being blinded. But if the bright lights are brought suddenly into view, and there is no time between the first appearance of the bright lights and the happening of the accident to observe the necessary rules of caution with reference to stopping and pulling to one side, the driver of the automobile cannot be charged with negligence for not stopping.”
In the present case the plaintiff has, in effect, alleged that he was temporarily blinded, and that immediately after the oncoming vehicle had passed the Watts automobile and he was then able to see the truck he at that time was so close that he was unable to keep from striking the same even though he applied his brakes and made every possible effort to do so. Accepting these facts as true, which we must, the plaintiff has clearly alleged a similar situation to that which was proven in the Hanno and Waters cases, supra, in which the particular facts and circumstances exonerated the driver of the moving car of any contributory negligence because of his being temporarily confused or blinded by the headlights of an on-coming automobile, and these facts, if proven, would also free the plaintiff in the present of any contributory negligence.
In Warnick v. Louisiana Highway Commission, La.App., 4 So.2d 607, 612, the Court stated;
“We are once more faced with the ever-recurring proposition of negligence, vel non, of a driver driving an automobile on the highway at night and running into the rear end of a parked or stopped vehicle that has no signal lights or any other warning device to indicate its presence on the highway.” ******
“The color of the truck, according to the testimony vagufely blended with the pavement, and made it even more difficult for Ledet, in his approach, to discern it. The on-coming car also had some effect on Ledet’s driving, impairing his vision momentarily. To take care of this impairment, Ledet says that he released his foot free from' the accelerator, which no doubt had the effect of slowing down his speed.
“ * * * The fact remains, after considering all of the proof, that his testimony stands uncontradicted to the effect that he was practically on the truck and just saw the tires on it in time to swiftly veer his car to the left and succeeded in pulling only the front portion- of it beyond the truck, 'but un-' fortunately striking the left rear end of the truck with the right front of his car at the post or support of the windshield in front of the seat occupied by the young lady seated next to him, with above-recited fatal results. We do not find much distinction between this case and the case of Gaiennie v. Co-operative Produce Company, Inc, et al, 196 La. 417, 199 So. 377, wherein the Supreme Court held that the driver of an automobile that strikes the rear end of a parked vehicle in cases of this kind is not guilty of such negligence as to bar his recovery. Applying the principles as announced in that case to the case at bar, we are of the opinion, as found by the trial judge, that Ledet was not guilty of any contributory negligence barring his recovery.”
In the Warnick case the court found that Ledet, driver of the Chevrolet automobile which collided with the rear end of the unlighted truck, was traveling at about 40 miles per' hour just prior to the accident, and while the color of the truck made it difficult for Ledet to discern it, the court found that the lights of the on-coming car also had some effect as it impaired his vision momentarily. The fact that he released his foot from the accelerator, which the Court stated no doubt had the effect of slowing down his speed, had no effect upon the holding of the court that he was *250 free of contributory negligence, for the court found “that he was practically on the truck” when he first saw the tires in time to swiftly veer his car to the left. Thus we have another case in which the courts have recognized momentary impairment of vision, confusion of vision, or being temporarily blinded as a result of bright lights of an approaching motor vehicle as an unusual circumstance or exception, when considered with other facts and circumstances such as are shown in the cases cited and quoted.
Dodge v. Bituminous Casualty Company, supra [214 La. 1031, 39 So.2d 722], is decisive of the present case in that nothing more than proven than has been alleged in the case at bar. Our Supreme Court in commenting on the merits and the facts, stated:
“The record shows that the petition as amplified by the evidence fully embraces the charge of negligence against the defendant. The plaintiff was driving his automobile at a legal rate of speed on the paved highway, it was nighttime, his lights were burning, and he was keeping a careful lookout ahead. The truck was stationary on the highway, without lights and without flares, as required by law, and was parked at an angle of about 45° on the paved highway, extending about 4 or 6 feet into the lane of traffic in which the plaintiff was travelling. The plaintiff’s visibility was affected by the oncoming traffic with lights burning, approaching from the opposite direction and he did not see the unlighted parked tmtck until he was right on it and could not have avoided the collision because to swerve around the truck would have brought him head-on into an oncoming car. Mrs. Antoon, a passenger in the oncoming car, with headlights burning, was produced as a witness. She testified that there were neither lights, flares nor signals of any kind to warn the public that the parked truck was standing on the paved highway. The defendant offered no evidence to establish his alternative defense of contributory negligence.” (Emphasis added.)
The dissenting opinion was not based upon any disagreement with the conclusion reached by the majority upon the facts as found by the majority but disagreed with the finding of fact that the plaintiff was blinded by the headlights of any approaching car. Justice McCaleb in his dissenting opinion stated:
“ * * * If plaintiff’s headlights were burning properly and he was keeping a careful lookout, there was no reason why he could not see the truck, unless it be that he means, by his allegation that the truck was not visible ‘when cars approached from the opposite direction,’ that he was blinded by the headlights of those cars. But he does not allege this and he has at no time offered to amplify his petition in that respect. His averment that he was keeping a careful lookout is merely a conclusion; the law charges him with the duty of seeing that which could be seen by a prudent motorist.
“But, even if it be generously assumed that the allegations of the petition are sufficient to eke out a cause of action, plaintiff’s evidence falls far short of exhibiting any excuse for his failure to see the parked truck. When questioned about the accident, plaintiff stated as follows: * *
“ * * * He does say that, after the accident, a car containing two ladies was coming in the opposite direction but at no time during his examination did he testify that he was blinded by the headlights of that or any other car; that the night was foggy or that there was any other reason why he could not, by exercising the ordinary prudence required of every motorist, see the parked truck in time to avoid striking it.
“Indeed, the facts of the case reveal that plaintiff was driving on a perfectly straight and level road of usual dimensions with gravel and dirt shoulders on each side some eight or nine feet wide — and he testified that his headlights were burning properly. Under such conditions, in the absence of a shewing that he was blinded by the *251 headlights of cars coming from the opposite direction, it is patent that he is guilty of negligence in failing to see the parked truck and stop his car, which was travelling at 45 miles per hour, short of a collision. * * * ”
The following comment on the Dodge case made by the District Judge in Buford v. Combs, La.App., 50 So.2d 469, 476, was quoted by this Court with approval when that case was before it on appeal, viz:
“ ‘In the Dodge case plaintiff’s vision was impaired by approaching vehicles, but there is nothing in the opinion of the Court to indicate that plaintiff dimmed or deflected his headlights. And there is no mention in the opinion as to the distance the body of the truck was suspended above the ground, the distance it extended behind the rear wheels, or the color or design of the body of the parked vehicle. The evidence simply showed that plaintiff’s visibility was affected by the lights of oncoming traffic, and because his visibility was so affected, he did not see the unlighted truck parked at an angle on the highway until he was right on it. Under those circumstances the Supreme Court held that plaintiff was not contributory negligent in colliding with the parked vehicle.’ ”
The District Court in its written reasons points out what it believed to be the difference between the present case and the Dodge case, supra, and Carter v. LeBlanc Lumber Co., supra. Both those cases were tried on their merits, and the defendant might be able to show on the trial of this case that the plaintiff could have avoided the collision by swerving around the parked truck or that by reason of the manner in which the truck was parked on the highway he should have seen it or that had the plaintiff upon being blinded immediately released his accelerator and applied his brakes the accident could have been avoided, but clearly such is a matter of defense, and the absence of such allegations is not to be considered upon an exception of no cause of action.
Counsel for defendant cites and relies upon the following cases; Hogue v. Akin Truck Line, La.App., 16 So.2d 366, 368; Tatum Bros. v. Herrin Transportation Co., La.App., 29 So.2d 799; Ledoux v. Beyt, La.App., 35 So.2d 472; Mickens v. F. Strauss & Son, La.App., 28 So.2d 84; Odom v. Long, La.App., 26 So.2d 709.
We do not consider these cases as controlling.
Therefore, in the present case we are of the opinion that the plaintiff has stated a cause of action and has not affirmatively alleged his own contributory negligence, and that the judgment of the District Court is erroneous and must be reversed.
It is, therefore, ordered that the exception of no cause or right of action be and the same is hereby overruled and the case remanded to the District Court for further proceeding in accordance with law.