McCALEB, Justice.
 

 The Public Service Commission is appealing from a judgment annulling, at the instance of plaintiffs, its Order No. 7942 which permitted A. Colletti Trucking, Inc. to lease its certificate of public convenience and necessity to operate over irregular routes within this State as a motor carrier of oil field equipment and household goods.
 

 On June 19, 1959 A. Colletti Trucking, Inc. and Richard T. Gavin, the proposed lessee, applied to the Commission for approval of a lease of Colletti’s Certificate of Public Convenience and Necessity No. 5037-A, issued on November 7, 1955, under which Colletti had continuously operated a motor carrier business until December, 1958.
 

 This application was opposed by the motor carriers competing with Colletti on the ground that he had not substantially operated his business for six months prior to the lease and, therefore, had lost his right to transfer the permit in view of the provisions of Act 131 of 1958, R.S. 45 :- 166B. This Section provides as follows:
 

 “No certificate or permit shall be sold, leased or transferred, nor shall such certificate or permit be used by any other than the person, firm or corporation to whom it was originally granted, unless and until it be shown by a clear preponderance and to the satisfaction of the commission that the owner thereof shall have for a period of six consecutive months, immediately prior to the lease transfer or use thereof by one other than the owner, substantially operated all rights under said certificate or permit; or that the failure to so operate was due to bankruptcy, receivership, or other legal proceedings, or to other causes beyond his or its control.”
 

 At the hearing before the Commission, the evidence disclosed that Colletti had closed his terminal shortly before Christmas of 1958 and had transported only four loads since that time. Colletti testified that the reason for closing the business was due to its insolvency and his corporate balance sheet for 1958 disclosed an operational loss of $13,000 and a year-end deficit of $25,192, despite the fact that the certificate in question is listed as a corporate asset having a value of $15,000. Colletti further stated that he was trying to clear up his debts, get out of the trucking business and move back to his home in Beaumont; Texas, where he had an interest ($2,000 of stock) in a motel operated by his mother.
 

 In approving the lease to Gavin, the Commission found as a fact that, although Colletti had not substantially operated his motor carrier business for six months immediately prior to June 19, 1959, he had not
 
 *1064
 
 lost his right to transfer the certificate as his failure to operate was due to his unstable financial condition—a cause beyond his control within the meaning of R.S. 45 :- 166B.
 

 The district judge disagreed with the Commission’s interpretation of the statute and sustained the position of plaintiffs that insolvency of a permittee does not come within the general proviso contained in R. S. 45:166B which reserves to a permittee, who has failed to substantially operate under his permit for a period of six months, the right to transfer his certificate when his failure “ * * * to so operate was due to banlcruptcy, receivership, or other legal proceedings, or to other causes beyond his or its control”.
 

 In his Court, counsel for the Commission argues that financial inability to operate a business comes within the above quoted exception and is a cause beyond a permittee’s control as a matter of law, pointing out that the specific terms, bankruptcy and receivership, when read with the general clause connote a legislative intent to include adverse financial condition as an excusable cause for non-operation.
 

 Conversely, plaintiffs contend that the legislative intent in enacting R.S. 45:166B was to terminate the trafficking in “dead certificates”, i. e., those under which substantial operations have not been conducted, and thus put to an end the popular practice of new operators evading a Com.mission hearing on public convenience and necessity by buying or leasing such certificates. Accordingly, they plead for a strict construction of the general excepting clause, declaring that the words “other causes beyond his or its control” mean causes emanating solely from outside sources and that business failure is to be regarded as being, at least, partially within the permittee’s control.
 

 In addition, plaintiffs’ counsel invoke the maxim “ejusdem generis”, i. e., that general words, such as “other, etc.”, following an enumeration of particular classes or things should be construed to mean “other such things” as those enumerated. Thus, say counsel, the words “other causes beyond his or its control” should not be interpreted so as to include all other causes beyond the permittee’s control but should be restrictively read to encompass only causes similar to “bankruptcy, receivership, or other legal proceedings * * * ”.
 

 We find no merit in the contention that the doctrine of ejusdem generis is applicable here. To begin with, that doctrine is not one of universal application (see 50 Am.Jur. Statutes, Sec. 250, p. 246; 82 C.J.S. Statutes § 332b, at page 662). Its value as a guide to ascertain legislative intent is limited to cases in which the true intent cannot be discovered from the language employed in the statute.
 

 In the case at bar, we think the clear language of the general excepting clause indi
 
 *1066
 
 cates a legislative design to exempt from the prohibited transfers any certificate, when failure to conduct substantial operations under its authority is due to any cause factually shown “to the satisfaction of the commission” to be beyond the control of the permittee. By no process of interpretation could the general excepting clause be said to be restricted to causes similar to bankruptcy or receivership, for those words are followed by the words “or other legal proceedings”, (necessarily covering all other court action preventing the operation of the rights under the permit) which ,are then followed by the omnibus clause stating “or to other causes beyond his or its control.” It is manifest, we think, that this clause broadly extends the exemption from the statutory prohibition to any other cause, no matter from what source, provided it is beyond the control of the operator.
 

 The argument of counsel for plaintiffs that the exceptions contained in the statute should be given a strict construction, because the purpose of the amendment to R. S. 45:166 by Act 131 of 1958 was to terminate the traffic in “dead certificates”, cannot stand in view of the broad language of the omnibus clause.
 

 Indeed, the only questionable feature of the case is whether the failure of the permittee to operate because of insolvency is, of itself, sufficient to justify the Commission’s conclusion that the insolvency was a cause beyond the permittee’s control within the meaning of the omnibus clause of the statute.
 

 We think this demands an affirmative answer when consideration is given to the other exceptions in the statute which recognize voluntary, as well as involuntary, bankruptcy and receivership as excusable causes for failure to operate. We are, of course, cognizant that insolvency of a business is not always due to factors beyond the owner’s control, as it may be attributable to his utter neglect of the enterprise, faulty judgment, or to other human failings. On the other hand, business failures ordinarily emanate from varied and unexpected conditions, circumstances and events beyond the operator’s control. Hence, it is fair to say that the Legislature had this in mind when it specially excepted from the prohibitive statute bankruptcy and receivership, which are the ultimate results of financial instability. From this, it is logical to deduce that, in further excepting
 
 “
 
 * * * other causes beyond his or its control * * * ”, the lawmakers also intended that insolvency, being another cause for failure to operate, may be regarded by the Commission as a cause beyond the operator’s control unless it is shown that the defaulting permittee contributed to his financial straits. Compare, Gregg Cartage & Storage Co. v. United States. 316 U.S. 74, 62 S.Ct. 932, 86 L.Ed 1283.
 

 
 *1068
 
 In the case at bar, the Commission has made its factual finding, in aid of which it presumed that the permittee’s insolvency was due to circumstances beyond its control. Since no evidence was adduced to rebut this presumption, it cannot now be contended that the Commission acted arbitrarily, unreasonably, or capriciously. The rulings of the Commission are entitled to great weight and will not be overturned in the absence of a clear showing of abuse of power. Gulf States Utilities Co. v. Louisiana Public Serv. Commission, 222 La. 132, 60 So.2d 250; Illinois Central R. Co. v. Louisiana Pub. Serv. Commission, 224 La. 297, 69 So.2d 43.
 

 The judgment appealed from is reversed and the suit is dismissed at plaintiff’s costs.